**In re ATLANTA–STEWART PARTNERS, a Pennsylvania limited partnership, Debtor.**

**EQUITABLE LIFE INSURANCE COMPANY OF IOWA, Movant,**

**v.**

**ATLANTA–STEWART PARTNERS, Respondent.**

**Bankruptcy No. A95–70542–ADK.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Feb. 20, 1996.

E. Reid Garrett, Atlanta, GA, for Movant.

William A. Capp, Parker, Johnson, Cook & Dunlevie, Atlanta, GA, for Respondent.

### MEMORANDUM OF OPINION AND ORDER

ARMAND DAVID KAHN, Bankruptcy Judge.

The above-styled Chapter 11 bankruptcy case is before the Court on consideration of approval of the Debtor's Disclosure Statement. A hearing was held on December 5, 1995. Objections to the Disclosure Statement were filed by Equitable Life Insurance Company of Iowa ("Equitable") and the United States Trustee. At the hearing, the issue of the implications of the 1994 Amendments to the Bankruptcy Code dealing with § 1124 arose.[1] The Court took the matter of the approval of the Debtor's Disclosure Statement under advisement and directed the Parties to file briefs. After consideration of argument of counsel and the briefs filed, the Court finds that it will approve the Debtor's Disclosure Statement for the following reasons.[2]

In its proposed Plan of Reorganization, the Debtor classifies its creditors into five (5) separate classes. The dispute surrounds Class 4, which is "an administrative convenience class consisting of those unsecured creditors whose individual allowed claims are less than $1,000." Debtor's Plan of Reorganization at 5.[3] The Debtor proposes to pay Class 4 creditors 95% of their allowed claims. Equitable objects to the Disclosure Statement, inter alia, on the ground that the Debtor's proposed Plan of Reorganization is unconfirmable on its face because the Debtor cannot obtain the favorable vote from at least one impaired class of creditors. It charges that the Debtor has artificially

---

1. The Court notes that the Debtor filed for relief under Chapter 11 of the Bankruptcy Code on July 31, 1995. Therefore the 1994 Amendments to the Bankruptcy Code, which have an effective date of October 22, 1994, are applicable to the Debtor's bankruptcy case.

2. The Court finds this matter to be a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. The Bankruptcy Code expressly authorizes a debtor to classify small claims in a separate class:

 A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

 11 U.S.C. § 1122(b). Neither Equitable nor the United States Trustee challenges the Debtor's separate classification of Class 4 creditors.

impaired Class 4 by not paying this class 100% of their claims. In its Response, the United States Trustee has calculated that paying Class 4 creditors the additional 5% of their claims would only cost the Debtor $154.33. United States Trustee's Response to Debtor's Disclosure Statement at 2.

The Debtor counters that Class 4 has not been artificially impaired and that, even if it were to amend its Plan of Reorganization to pay Class 4 creditors 100% of their allowed claims, that class would still be impaired according to the Bankruptcy Code, as amended by the 1994 Amendments. Therefore, if Class 4 votes in favor of the Debtor's Plan of Reorganization, it would satisfy § 1129(a)(10), which requires that "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider."

Prior to the 1994 Amendments, § 1124 read as follows:

Except as provided in section 1123(a)(4) of this title, a class of claims or interest is impaired under a plan unless, with respect to each claim or interests of such class, the plan—

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest;

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any ·reasonable reliance by such holder on such con-

tractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(3) provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to—

(A) with respect to a claim, the allowed amount of such claim; or

(B) with respect to an interest, if applicable, the greater of—

(i) any fixed liquidation preference to which the terms of any security representing such interest entitle the holder of such interest; or

(ii) any fixed price at which the debtor, under the terms of such security, may redeem such security from such holder.

11 U.S.C. § 1124. The 1994 Amendments deleted subsection (3) in its entirety. The Debtor contends that, with the deletion of § 1124(3), a class of creditors which is paid in full is now impaired, because there is nothing remaining in § 1124 which would define such a class as unimpaired.

 Equitable argues a class · receiving payment in full from an insolvent debtor should still be considered an unimpaired class under § 1124(1), which provides that a class of claims is unimpaired if the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." However, the common sense reading of this subsection would not include payment in full. Obviously, a creditor who receives payment of its claim in its entirety does not retain any legal, equitable, or contractual rights. In addition, the suggested reading of § 1124(1) would have rendered the former § 1124(3) superfluous.

In deleting § 1124(3), Congress was responding to the result reached in the case of *In re New Valley*, 168 B.R. 73 (Bankr.D.N.J. 1994). In *New Valley*, the court determined that, where a solvent debtor's plan proposed

to pay a class of creditors in full, but without postpetition interest, the class was unimpaired pursuant to § 1124(3). While deleting § 1124(3) in its entirety seems an extreme remedy for the problem arising in *New Valley* (for example, Congress could have amended § 1124(3) to distinguish between solvent and insolvent debtors), the legislative history demonstrates that Congress intended to do away with the concept that a creditor receiving payment in full is unimpaired.

> As a result of this change, if a plan proposed to pay a class of claims in cash in the full allowed amount of the claims, the class would be impaired entitling creditors to vote for or against the plan of reorganization. If creditors vote for the plan or reorganization, it can be confirmed over the vote of a dissenting class of creditors only if it complies with the "fair and equitable" test under section 1129(b)(2) of the Bankruptcy Code and it can be confirmed over the vote of dissenting individual creditors only if it complies with the "best interests of creditors" test under section 1129(a)(7) of the Bankruptcy Code.

140 Cong.Rec. H10752 (Oct. 4, 1994).

Although treating a class of creditors receiving payment in full as impaired seems contrary to the way we have traditionally thought of impairment under the Code, it does have some advantages. For example, litigation over artificial impairment will now be avoided, because debtors will not be forced to contrive an impaired class by placing certain creditors in a separate class and paying that class less than 100 cents on the dollar. In addition, the fight over confirmation will now focus on the heart of the plan and whether the plan is "fair and equitable" and in the "best interest of creditors."

■ The Court notes that this is a case of first impression. It appears that no other court has published an opinion discussing the ramifications of the deletion of § 1124(3). The Court must rely on the language of § 1124, without subsection (3), and the legislative history. After much thought, the Court must agree with the Debtor's position that, under § 1124 as amended, a class of creditors which will receive payment in full upon the effective date of the plan is impaired within the meaning of the Bankruptcy Code.

Therefore, in the case *sub judice*, the Court finds that the Debtor's Disclosure Statement should be approved. The issue of whether the Debtor's Plan of Reorganization should be amended to increase the payment to Class 4 creditors to 100% may be renewed by objection in the context of the hearing on confirmation.

### ORDER

Thus, in accordance with the reasoning above, **IT IS THE ORDER OF THE COURT** that the objections to the Debtor's Disclosure Statement filed by Equitable Life Insurance Company of Iowa and the United States Trustee be, and the same hereby are, **OVERRULED.**

**IT IS THE FURTHER ORDER OF THE COURT** that the Debtor's Disclosure Statement filed on October 31, 1995 be, and the same hereby is, **APPROVED.**

The Clerk is hereby directed to serve a copy of this Order on the Debtor, Debtor's attorney, the Movant's attorney, and the United States Trustee.

**IT IS SO ORDERED.**